# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:09 cr 42

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| JOSHUA TEAGUE. | ) | |
| | ) | |

**THIS CAUSE** came on to be heard before the undersigned, pursuant to an oral motion for detention made by the government pursuant to 18 U.S.C. § 3143(a)(1). The defendant appeared with his counsel, Albert M. Messer and the government was represented through Assistant United States Attorney David Thorneloe. From the evidence presented and the arguments of the Assistant United States Attorney and the arguments of defendant's counsel, the undersigned makes the following findings:

**Findings.**

At the call of this matter on for hearing, the undersigned made inquiry of the Assistant United States Attorney and defense counsel as to whether or not the charges to which the defendant proposed to enter a plea of guilty were offenses that would be included within the classification of offenses as set forth in 18 U.S.C. § 3143(a)(2). If the defendant pled guilty to offenses described in 18 U.S.C. § 3143(a)(2), the undersigned would be required to detain the defendant unless the exceptions set forth in the statute existed. Mr. Thorneloe advised the undersigned that the offenses to

which the defendant had proposed to enter a plea of guilty were not offenses that were described within the classifications as set forth under 18 U.S.C. § 3143(a)(2). After Mr. Thorneloe made this statement, the undersigned immediately went forward to conduct a proceeding, pursuant to Rule 11 of the Federal Rules of Criminal Procedure with the defendant and the defendant entered a plea of guilty to the three counts of offenses described within the bill of indictment.

After the defendant had entered his plea, Mr. Thorneloe stated that the government was in fact moving for detention of the defendant pending sentencing, pursuant to 18 U.S.C. § 3143(a)(1).

The records in this cause show that the defendant was charged in a bill of indictment issued on May 19, 2009 with possessing visual depictions of a minor engaging in sexually explicit conduct in violation of Title 18 U.S.C. § 2252(a)(4)(B). It is alleged that offense occurred on June 27, 2007. In count two, the defendant is charged with committing a similar offense of violation of Title 18 U.S.C. § 2252(a)(2). The date of the occurrence of that offense is alleged to be July 16, 2006. In count three, it is alleged that the defendant, on May 2, 2007, transported a visual depiction which involved the use of a minor engaging in sexually explicit conduct in violation of Title U.S.C. § 2252(a)(1). The defendant voluntarily appeared before the undersigned for an initial appearance hearing on May 29, 2009. At that hearing,

Mr. Thorneloe advised the court that the government was not requesting that the defendant be detained and had no objection to the defendant being released on terms and conditions of pretrial release. As a direct result of this statement, the undersigned entered an order releasing the defendant and placing him on terms and conditions of pretrial release which required home detention with electronic monitoring and other appropriate conditions.

At the detention hearing of August 13, 2009, United States Probation Officer Angela Pickett was called as a witness for the defendant. Officer Pickett testified that she did not have the supervisory responsibility for the defendant during the period of time since May 29, 2009 when he had been placed on pretrial release. The officer who had supervisory responsibility was United States Probation Officer Robert Ferguson. Officer Pickett did have Officer Ferguson's notes that stated the defendant had committed no violations of the terms of pretrial release. The notes further stated that the defendant hardly ever left his parents house where he was serving his period of home detention and the defendant kept in touch with Officer Ferguson by almost constant contact. The notes further showed that Officer Ferguson had made visits at the home of the defendant.

The defendant next called David Teague as a witness in this matter. David Teague is the father of the defendant, Joshua Teague. David Teague testified that he is 51 years old and that he resides with his wife of 32 years in a home located

approximately eight miles to the west of Marshall, NC. His home is located in Madison County but is also located only a mile or two miles from the Buncombe/Madison County, NC line. David Teague testified that he has been employed at a machine shop where he works 45 hours per week for over 30 years. Mr. Teague's wife, the mother of Joshua Teague, is employed as a teacher's assistant in the first grade at Mars Hill Elementary School. Also residing in the home of Mr. & Mrs. Teague is their daughter, who is the sister of the defendant. The defendant's sister is age 22 and she is employed as a child care provider at a hospital.

David Teague testified that his son had no criminal record and had never been in any trouble whatsoever prior to the instant charges. He testified the defendant had always abided by the rules of his parent's home and from and after the time the defendant was placed on home detention, the defendant had complied totally and completely with all terms and conditions of release and rarely had left the home of Mr. & Mrs. Teague and then only to be in the yard of the home.

David Teague testified that in June 2007 he was at a doctor's appointment when he received a telephone call advising that law enforcement officers had come to David Teague's home. Mr. Teague left the doctor's office and went to his home and found there were officers at his home who were either with the SBI or the FBI. Those officers took a computer from the room of the defendant. David Teague then followed the officers to an office in Skyland, NC. At that office he found his son,

Joshua, the defendant. While the defendant met with the officers, one of the officers asked David Teague if he had any problem with the officer going back and going through David Teague's home again. Mr. Teague stated he had no objection and he rode with the officer in the officer's vehicle back to David Teague's home and allowed the officer to go through the home to the officer's satisfaction. Then David Teague and the officer traveled back to Skyland in the officer's vehicle. When they arrived back at Skyland, the officers allowed David Teague and Joshua Teague to leave. Joshua Teague had operated his own vehicle to the office and the defendant and David Teague each left in their own vehicles. Thereafter, David Teague did not hear anything further about the matter until his son, Joshua was indicted and arrangements were made for him to self-surrender on May 29, 2009.

Cynthia Whitt testified that she had been dating the defendant for approximately eight and one-half years since the time when she and the defendant had been in high school at Madison High School in Marshall, NC. Ms. Whitt is a graduate of Mars Hill College with a degree in education. She has taught math at Madison High School for the past five years. Ms. Whitt testified that she lives in the Big Laurel Community of Madison County which is located approximately a forty-six minute drive from the home of the defendant and his parents. During the period of time that she and the defendant have been dating and prior to May 29, 2009, the defendant had stayed at the home of her mother and father. Ms. Whitt's mother and

father are contractors and they had improved a room that was connected to their home so that the defendant could spend time at their home. Ms. Whitt further testified that after the search of the defendant's home the defendant had told her about his possession of child pornography and he was remorseful. Ms. Whitt described that the defendant had sought an evaluation with Dr. Bill Tyson to see if the defendant needed sexual offender treatment and the result of the evaluation, at which Ms. Whitt had been in attendance, showed that the defendant was not in need of sexual offender treatment and he was not a danger to any minor. Ms. Whitt also stated that she had discussed with the defendant the issue of the defendant's mental condition, including whether or not the defendant might harm himself. She advised the defendant stated that he would never commit such an act. She further described that the defendant had always been kind to her and she had never seen him commit any act of violence or threat of violence.

After the defendant had presented these witnesses at the hearing during the morning of August 13, 2009, the undersigned was advised that the defendant wished to call as a witness United States Probation Officer Robert Ferguson. Officer Ferguson was not in attendance at the hearing and was in Charlotte, NC. Mr. Thorneloe advised that the government wished to present witnesses, including the investigating officers who were also not present. As a result, the undersigned

continued the hearing until the morning of August 14, 2009 to allow the defendant to obtain the presence of Officer Ferguson and to allow the government to have their investigating officer or officers be present and present their testimony.

On the morning of August 14, 2009 the defendant called Officer Ferguson as a witness. He testified that he had visited at the defendant's home on five occasions. The first occasion, he had contacted the defendant and told him of his upcoming visit. On the other four times, Officer Ferguson had visited at the defendant's home with no warning and at various times. Officer Ferguson testified he had never found any evidence whatsoever that the defendant had violated any term or condition of pretrial release. Indeed, the defendant had only left his residence three times since May 29, 2009, that being two times to visit with his attorney and the third time to come to court on August 13, 2009. Officer Ferguson said he had no concerns whatsoever about the continued release of the defendant on terms and conditions of pretrial release.

There was also introduced into evidence, the United States Pretrial Services Report. The report showed that the defendant was born on June 27, 1983 which would make the defendant 26 years old. The defendant resides with his parents and his sister. The defendant has never married and has no children or dependents. He has been a life-long resident of Madison County, NC. The defendant was employed

at Alliance Carolina Tool and Mold in Arden, NC for three and one-half years and then was terminated in December of 2008 because there was a lack of work. The defendant has been unemployed since that time. The defendant received his high school diploma from Madison High School on June 9, 2001. Thereafter, the defendant attended Asheville-Buncombe Technical Community College and received a diploma in machinery technology on August 1, 2003 and received an Associate and Applied Science degree in tool, die and mold making on May 14, 2004. Thereafter, the defendant received a certificate of completion of apprenticeship as a mold maker from the State of North Carolina Department of Labor on June 13, 2008 and also a certificate from the United States Department of Labor showing the defendant had completed an apprenticeship as a mold maker on June 13, 2008 under the sponsorship of Alliance-Carolina Tool and Mold Corporation. The defendant has no criminal record and no history of mental health or substance abuse issues. The defendant passed his initial drug test upon being released on pretrial supervision.

After the defendant rested his presentation of evidence the government advised that the government would not present evidence in this matter.

**Discussion.**

1. <u>The government's oral motion of the morning of August 14, 2009</u>.

On the morning of August 14th and at the time of the reconvening of the

hearing of the government's motion which had been orally made on August 13, 2009, pursuant to 18 U.S.C. § 3143(a)(1), Mr. Thorneloe advised the undersigned the government was changing its position and the government was now moving to detain the defendant, pursuant to 18 U.S.C. § 3143(a)(2). Mr. Thorneloe explained it was now the government's contention that the crimes to which the defendant had pled guilty were crimes that were included within the classifications as set forth under 18 U.S.C. § 3143(a)(2). After considering the arguments, the undersigned declined to allow the government to proceed or for the court to consider the detention of the defendant, pursuant to 18 U.S.C. § 3143(a)(2). Prior to the Rule 11 proceeding with the defendant, the undersigned had inquired of the government as to whether or not the crimes to which the defendant was proposing to plead guilty were crimes included within the classification of 18 U.S.C. § 3143(a)(2). The government replied that those crimes were not included within the classification. The undersigned finds that the defendant could now argue that he did not have due process of law if the court were to allow the government to now change their position after the entry of the defendant's plea of guilty. The undersigned further finds that it would be a violation of due process and unfair to the defendant to allow the government to now change the basis for their request for detention while the court was almost through hearing the evidence in a hearing that both the government and the defendant had agreed was

being conducted pursuant to 18 U.S.C. § 3143(a)(1). The government had also presented to the undersigned, on August 13, 2009, a copy of U.S. v. Martinez, 2009 WL 702828 (W.D.N.C. 2009) which discussed the application of 18 U.S.C. § 3143(a)(1) and the fact that the burden of release under that statute rests with the defendant. Based upon the government's previous position and to prevent manifest unfairness and lack of due process to the defendant, the undersigned declines to consider the detention of the defendant, pursuant to 18 U.S.C. § 3143(a)(2) and has considered this matter under the provisions of 18 U.S.C. § 3143 (a)(1).

2. <u>Release of the defendant pending sentencing pursuant to 18 U.S.C. § 3143(a)(1).</u>

The release of a defendant is no longer favored once guilt of a crime has been established. <u>U.S. v. Vance</u>, 851 F.2d 166, 170 (6th Cir., 1988). The presumption is that a person who has entered a plea of guilty shall remain in custody. <u>U.S. v. Jimmy Lee Williams</u>, 3:01cr183-1-T, Order filed July 25, 2002, p. 3 (Judge Thornburg, W.D.N.C.). Pending sentencing, the burden of establishing that the defendant is not likely to flee or pose a danger to the safety of any other person or the community rests with the defendant. Rule 46(c) of the Federal Rules of Criminal Procedure states as follows:

    (c) **Pending Sentencing or Appeal**. The provisions of 18 U.S.C. §

3143 govern release pending sentencing or appeal. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.

18 U.S.C. § 3143(a)(1) provides that the defendant be detained:

unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b)(c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

In arguments by Mr. Thorneloe, he conceded that the burden of proof of the defendant has been met as to risk of flight. In considering whether or not the release of the defendant shows that his release would create a risk of harm or danger to any other person or the community, this court has considered all evidence presented. The court has particularly considered the fact that the defendant has no previous criminal record; that he has not violated any term or condition of pretrial release whatsoever and that he has complied with all of those terms and conditions and, the recommendation and request that the government made on May 29, 2009 in which the government requested that this court release the defendant on terms and conditions of pretrial release. Such a recommendation indicates to the undersigned that the government did not believe that the defendant would be a risk of flight or a danger to any other person or the community. The government would not make such a representation and request that this court release the defendant unless the government

was satisfied that neither one of those factors were in existence with regard to this particular defendant. Between the time of that recommendation being made on May 29, 2009 and the release of the defendant in accordance with that recommendation, the defendant has not committed any act that shows his release would now cause the undersigned to find that his release would be a danger to the community. The government did not present any evidence in this matter. As a result of all the evidence considered the undersigned finds by clear and convincing evidence that the release of the defendant would not create a risk of harm or danger to any other person or the community.

## ORDER

**IT IS, THEREFORE**, **ORDERED** that the motion of the government, pursuant to 18 U.S.C. § 3143(a)(1), be **DENIED** and the defendant be continued on the terms and conditions of pretrial release entered in this matter on May 29, 2009.

Signed: August 19, 2009

Dennis L. Howell
United States Magistrate Judge